UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| DALE ARMON, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | No. 07 C 50173 |
| McHENRY COUNTY, *et al.* | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

FREDERICK J. KAPALA, District Judge:

In this action brought pursuant to 42 U.S.C. § 1983, plaintiff, Dale Armon, claims that defendants, McHenry County; the McHenry County Board of Health; Patrick McNulty, the Public Health Administrator of the McHenry County Department of Health; Dr. Edin Mehanovic, the administrator of McHenry County Animal Control; Sean Graf,[1] an inspector for McHenry County Animal Control; and Jerry Rivard, the manager for McHenry County Animal Control, violated her Fourth and Fourteenth Amendment rights as a result of an illegal search of her farm and seizure of several animals found on the premises. The parties have filed cross-motions for summary judgment. As discussed below, because there is no genuine issue of material fact concerning the validity of the search warrant in this case, the court concludes that defendants are entitled to summary judgment.

I. BACKGROUND

The following, relevant facts are undisputed. At all relevant times, plaintiff resided on a

---

[1] Based on the evidence in the record, it appears that this defendant's actual name is Sean Graff, and that he is improperly named Sean Graf in the complaint. Nevertheless, for the sake of consistency, the court will refer to this defendant throughout as "Graf."

large piece of farm property located in Hebron, Illinois. On September 8, 2005, Graf, an inspector for the Animal Control Division of the McHenry County Department of Health, filed a complaint for an administrative search warrant in which he requested the issuance of a search warrant for plaintiff's farm. According to the complaint, on August 3, 2005, Animal Control received a call from Claudia Dunn, who complained about the care of the animals residing at plaintiff's farm. Specifically, Dunn stated that she had been to the plaintiff's home that day and witnessed the "horrible conditions" in which the animals were being kept. Dunn also stated that plaintiff had no electricity or gas, and that plaintiff did not have enough money to pay her bills or buy food for the animals.

According to the complaint, Graf and Mehanovic went to plaintiff's home on August 3, 2005, in response to Dunn's complaint. After entering the home with the consent of plaintiff, they observed the following:

(1) A strong smell of animal feces and urine.
(2) Eight to ten cats in cages in the kitchen with litter boxes full of feces and urine.
(3) Five of the cats stood out as being extremely sick with upper respiratory infections.
(4) Five more cats located in a room of the home with litter boxes full of feces and urine, with feces running down the walls.
(5) A 12' by 13' in size room with 30 plus cats, with feces and urine running down the walls. The cats in this room appeared very thin with signs of infections.
(6) The garage on the premises housed at least 15 dogs. The dogs' kennels are dirt floored and there was a strong smell of urine, and had no water.
(7) What appeared to be a wolf-hybrid in the pool house located on the premises. She claims it was not a wolf-hybrid and had not [sic] registration of vaccination papers for the wolf.

On August 8, 2005, Graf returned to the residence for a follow up visit, at which time plaintiff stated that two of the cats had died due to their health. Graf further stated in the complaint that "[a]ll of the cats were emaciated and had mucus crusted on their faces," an iguana was found that was "very

2

thin and covered in mites," and "[t]here were other closed rooms with animals inside in poor condition."

The complaint alleged that there was probable cause to believe that these animals remained on the premises in violation of the McHenry County Animal Control Ordinance. Graf further asserted in the complaint that, "[d]ue to the severity of the condition of the numerous animals witnessed on the premises and the owner's disregard for the conditions under which the animals are living it is necessary to check the welfare of the animals on the premises and impound the animals for the health and well being of the owner and the animals."

An administrative search warrant was issued on September 8, 2005, the same day the complaint was filed. The judge issuing the warrant found that the complaint "states facts sufficient to show probable cause of possible violations of Article XVII of McHenry County Animal Control Ordinance and the Humane Care for Animals Act, 510 ILCS 70/3."[2] The warrant further stated:

> I therefore, command any agent of the County of McHenry and the State of Illinois to search the property . . . including the interior of any residence and any accessory building or structures for purposes of conducting an inspection for any evidence of violations of the [sic] Article XVII of McHenry County Animal Control Ordinance and the Humane Care for Animals Act, 510 ILCS 70/3, and to locate and seize any animals kept in on [sic] this property in violation.

The judge also commanded that an inventory be prepared and that the warrant be executed within 96 hours from the time of its issuance.

---

[2] Both Article XVII and the Humane Care for Animals Act provide, among other things, that a person or owner of any animal in their charge must provide the animal with a "sufficient quantity of good quality, wholesome, food and water," "adequate shelter," "veterinary care when needed to prevent suffering," and, in general, "humane care and treatment." See Art. XVII, Animal Control for McHenry County, § 11.02 (amended Feb. 1, 2007), available at http://www.co.mchenry.il.us/common/CountyDpt/Health/PDFDocs/ArticleXVII_001.pdf; see also 510 ILCS 70/3. Substantially similar regulations existed at the time the search warrant was issued. (See Doc. 28, Exh. A at 1-2).

Based on the search warrant, Graf and Mehanovic searched plaintiff's property. During the search, Animal Control seized some 53 cats, 10 dogs, a horse, a silver fox, 2 roosters, a sheep, birds and other small animals and issued an order of impoundment for them. Some of plaintiff's animals were not seized.

Plaintiff appealed the seizure of her animals to the McHenry County Health Department, and her appeal was denied by McNulty on September 19, 2005. She further appealed the decision to the McHenry County Board of Health Hearing Committee, which found that the Health Department was justified in impounding the animals, but recommended the return of the animals with certain unspecified conditions. Thereafter, the McHenry County Board of Health agreed that the impoundments were justified, rejected the Hearing Committee's recommendation to return the animals, and ordered that the animals remain in the custody of Animal Control. On January 17, 2006, plaintiff filed a complaint for administrative review in the Circuit Court of McHenry County, and on May 18, 2006, the trial court affirmed the Board's decision. Plaintiff then appealed that decision to the Second District Appellate Court, which, on July 10, 2007, entered an order affirming the Board's decision after finding it to be reasonable and informed. Plaintiff also filed a petition for rehearing, which was denied by the Appellate Court, and a petition for leave to appeal, which was denied by the Illinois Supreme Court. Plaintiff filed her complaint in this case on September 10, 2007, while her petition for rehearing was pending before the Appellate Court.

## II. ANALYSIS

Currently before the court are cross-motions for summary judgment. Plaintiff argues in her motion that defendants violated her Fourth Amendment right to be free from unreasonable searches and seizures by acting on a search warrant that was facially invalid. Specifically, plaintiff claims

4

that the search warrant was invalid because (1) it failed to specify with particularity the items to be seized; and (2) it was not based on probable cause because the information in the accompanying complaint was a month old, and therefore, stale. In their response, and in their motion for summary judgment, defendants argue that plaintiff is barred from litigating this matter under the doctrines of res judicata and Rooker-Feldman. Defendants also argue in their response to plaintiff's motion that the warrant and, as a result, the search were valid and did not violate plaintiff's constitutional rights. Finally, defendants assert that, even if there was a constitutional deprivation, they would be entitled to qualified immunity. Because a determination of the validity of the warrant is dispositive of the case as a whole, the court need not discuss defendants alternative arguments.[3]

A. Particularity of the Search Warrant

The Fourth Amendment provides, in relevant part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Because the particularity requirement is embedded in the text of the Fourth Amendment, "a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is

---

[3] The court recognizes that a determination of whether this action is precluded by the Rooker-Feldman doctrine implicates this court's subject matter jurisdiction, and therefore, this analysis should be conducted before reaching the merits of the case. See Garry v. Geils, 82 F.3d 1362, 1365 (7th Cir. 1996). Suffice it to say that the court has considered the applicability of the Rooker-Feldman doctrine and finds that it does not preclude the exercise of this court's subject matter jurisdiction given that the injury complained of in the instant litigation – a violation of plaintiff's Fourth Amendment rights – was not addressed in the state court's judgment in the administrative proceedings, but rather, is distinct from that judgment and occurred, if at all, before that judgment was entered. See Centres, Inc. v. Town of Brookfield, Wis., 148 F.3d 699, 702 (7th Cir. 1998) ("[T]he basic analytical methodology to be employed in determining the applicability of the Rooker-Feldman doctrine: whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.").

unconstitutional." Massachusetts v. Sheppard, 468 U.S. 981, 988 n.5 (1984). "The manifest purpose of this particularity requirement was to prevent general searches." Maryland v. Garrison, 480 U.S. 79, 84 (1987). In order to comply with this requirement, courts typically demand that "the executing officers be able to identify the things to be seized with reasonable certainty and that the warrant description must be as particular as circumstances permit." United States v. Jones, 54 F.3d 1285, 1290 (7th Cir. 1995) (quotation marks omitted). However, "[i]f detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized." United States v. Hall, 142 F.3d 988, 996 (7th Cir. 1998).

In this case, given the circumstances of the search, the court concludes that the warrant satisfied the particularity requirement of the Fourth Amendment. The warrant was by no means a general warrant and was limited to authorizing a seizure of "any animals" that were being kept on the property in violation of animal control ordinances and statutes. While it is true that the warrant did not specify each and every animal that was to be seized, that type of detail would have been impossible, especially considering the sheer volume of animals that were present on the property and the fact that animals of the same type are not necessarily readily distinguishable. See Hall, 142 F.3d at 996. There is no doubt that the officers executing the search warrant in this case – members of the McHenry County Animal Control – were "able to identify the things to be seized with reasonable certainty." Jones, 54 F.3d at 1290. Given all the facts and circumstances of this particular case, the court finds that the warrant was not invalid based on a lack of particularity.

An examination of the cases that plaintiff relies on in support of her claim further demonstrates that the warrant in this case was valid. In Groh v. Ramirez, 540 U.S. 551 (2004), officers had information that Ramirez had "a large stock of weaponry" on his ranch. Id. at 554. The

6

officers applied for a search warrant of Ramirez's ranch in order to look for "any automatic firearms or parts to automatic weapons, destructive devices to include but not limited to grenades, grenade launchers, rocket launchers, and any and all receipts pertaining to the purchase or manufacture of automatic weapons or explosive devices or launchers." Id. The application was supported with a detailed affidavit. Id. However, the warrant which the Magistrate signed utterly failed to set forth with any particularity any item to be seized, nor did it did incorporate by reference the itemized list contained in the application, instead it described only the place to be searched and not the things to be seized. Id. at 554 & n.2.[4] On review, the Supreme Court held that the warrant was "plainly invalid" and "did not describe the items to be seized at all," thus making the warrant "so obviously deficient" that the Court felt compelled to construe the search as a warrantless search. Id. at 557-58. Unlike the facts in Groh, the warrant in this case did not completely omit any description of the items to be seized, and therefore, the warrant does not suffer from the same facial invalidity that plagued the warrant in Groh.

Plaintiff also cites Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979), a case in which officers obtained a warrant to search an adult bookstore and seize all copies of two films that a Town Justice had determined were in violation of New York's obscenity laws. Id. at 321. However, the warrant also left open the possibility that other similar films or materials could be seized. Id. at 321-22. The Supreme Court concluded that the warrant did not satisfy the particularity requirement because "the warrant left it entirely to the discretion of the officials conducting the search to decide

---

[4] Specifically, in the section of the warrant application that called for a description of the "person or property" to be seized, the warrant stated: "[T]here is now concealed [on the specified premises] a certain person or property, namely [a] single dwelling residence two story in height which is blue in color and has two additions attached to the east. The front entrance to the residence faces in a southerly direction." Groh, 540 U.S. at 554 & n.2.

7

what items were likely obscene and to accomplish their seizure."[5] Id. at 325; cf. United States v. Shoffner, 826 F.2d 619, 631-32 (7th Cir. 1987) ("The particularity requirement of the Fourth Amendment is to be applied with a practical measure of flexibility and only requires reasonable specificity. The warrant described the categories of items to be seized sufficiently to circumscribe the discretion of the officers executing the warrant. It did not authorize a general search."). In the instant case, although the officers had some discretion in determining which animals to seize, a decision of whether an animal has been neglected is of much less constitutional magnitude than a decision of whether certain materials are obscene. Indeed, as the Seventh Circuit has explained, "where law enforcement's purpose is to seize material presumptively protected by the First Amendment, the items to be seized must be described in the warrant with increased particularity." Hall, 142 F.3d at 996. Given the significant differences between the items to be seized in this case, as compared to the items sought after in Lo-Ji Sales, the court finds that the decision in Lo-Ji Sales does not impact the validity of the warrant at issue here.

## B. Probable Cause – Staleness

"The Fourth Amendment permits a search of a person's home only if there is probable cause to believe that the authorities will recover the items subject to seizure at the time they execute the warrant." United States v. Newsom, 402 F.3d 780, 782 (7th Cir. 2005). A judge's determination of probable cause "is to be given considerable weight and should be overruled only when the

---

[5] In an apparent attempt to rectify the open-ended warrant, the Town Justice accompanied the officers during the execution of the search warrant where he viewed the other allegedly offending materials on site and determined, at that time, what was to be seized. See Lo-Ji Sales, 442 U.S. at 321-24. The Supreme Court held that this was improper and found that the Town Justice, by allowing himself to become a member of the search party, "did not manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application for a search and seizure." Id. at 326-27.

supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the [judge] could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." Id. (quotation marks omitted). "The age of the information supporting the application for a warrant is a factor that a magistrate should consider. It is, however, only one factor. If other factors indicate that the information is reliable and that the object of the search will still be on the premises, then the magistrate should not hesitate to issue a warrant." United States v. Batchelder, 824 F.2d 563, 564 (7th Cir. 1987).

Plaintiff argues that the delay of approximately 30 days between Graf's last inspection and the issuance of the warrant renders the warrant invalid because the information in support of the warrant had become stale. Given the circumstances of this case, the court disagrees. The Seventh Circuit has held that "[i]nformation a year old is not necessarily stale as a matter of law," especially where the warrant seeks evidence that is unlikely to have been disposed at the time of execution. Newsom, 402 F.3d at 783 (discussing evidence of child pornography). In this case, given the number of animals involved and the deplorable conditions in which they were found on two separate occasions, the court cannot say that probable cause for the warrant to issue had evaporated based on a 30-day delay, especially considering the deference given to the issuing judge's determination. See Newsom, 402 F.3d at 782. In other words, at the time the warrant issued, one month after the latest observation, it was highly likely that animal control officers still would discover evidence of multiple violations of the animal control ordinances and statutes identified in the warrant. See United States v. Morrow, No. 06-CR-54, 2006 WL 1937355, at *7 (E.D. Wis. July 11, 2006) (finding that "the passage of 30 to 40 days between the time the firearm was seen by the CS, and the

9

issuance of the warrant, was not so long that it could no longer be said that there was a 'fair probability' that the firearm would be found at the duplex"); see also Newsom, 402 F.3d at 783 (finding that "[i]nformation a year old is not necessarily stale as a matter of law"). Accordingly, the court concludes that the warrant was based on probable cause despite the age of the information contained in the accompanying complaint.

## III.  CONCLUSION

Because the search in this case was conducted pursuant to a valid search warrant, there was no violation of plaintiff's Fourth Amendment rights and defendants are entitled to judgment as a matter of law. Accordingly, plaintiff's motion for summary judgment is denied, and defendants' motion for summary judgment is granted.

Date: December 29, 2008                               ENTER:

                                                                       _____
                                                                       FREDERICK J. KAPALA
                                                                       District Judge